```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

RTM MEDIA, L.L.C.,              §
                                §
          Plaintiff,            §
                                §
VS.                             §    C.A. NO. H-07-2944
                                §
CITY OF HOUSTON.                §
                                §
          Defendant.            §
```

**OPINION, PRELIMINARY INJUNCTION ORDER, AND SCHEDULING ORDER**

Pending before the Court in the above referenced cause, pursuant to Federal Rule of Civil Procedure 65, is Plaintiff RTM Media, L.L.C.'s motion for temporary restraining order and preliminary injunction (instrument #3) enjoining Defendant the City of Houston ("the City") (1) from enforcing its Sign Code, codified at Chapter 46 of the City of Houston Building Code, because its content-based distinction between commercial and noncommercial speech violates the Free Speech Clause of the First Amendment[1] and (2) from requiring advertisers using the billboards to have a permit. A hearing was held on matter on September 20, 2007.

In this action, Plaintiff, a company that builds and maintains billboards, seeks declaratory and injunctive relief relating to the City of Houston's ordinance regulating billboards. Passed in 1980,

---

[1] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const., amend. I. The Due Process Clause of the Fourteenth Amendment makes the First Amendment applicable to the States. *Stromberg v. California*, 283 U.S. 359 (1931).

the Sign Code (filed at Court request as #8) regulates "signs," which it defines as "[a]ny outdoor display, design, pictorial or other representation that . . . shall be used for advertising." Section 4602. The Code excludes from the definition any "structure that is used exclusively and at all times . . . for messages that do not constitute advertising, including, but not limited to, political messages, religious or church related messages, public service, governmental and ideological messages and other copy of a nature that is not commercial advertising because such a structure is not a 'sign'," in other words, billboards containing noncommercial speech. Section 4619(c). Plaintiff contends that the Sign Code thus discriminates between signs for commercial speech, which it regulates or prohibits, and signs for noncommercial speech, which it allows to proliferate. The Code provides for the gradual removal of "non-conforming" signs and forbids the construction of any new "off premise" commercial signs (signs advertising a business not located on the premises). Section 4612(b). The stated purpose of the ordinance is to improve aesthetics, traffic safety, and property values.

Plaintiff claims that for twenty years the City of Houston and the State of Texas have disputed which of them controls billboards on interstate and primary state highway systems beyond Houston's

city limits but inside City's the extraterritorial jurisdiction [2] ("ETJ").[3]  The City argues it can prohibit placement of billboards in the ETJ and has demanded that the State stop issuing permits for billboards in this location.  Plaintiff has obtained permits from the state, but has not applied for permits from the City, and has erected and maintained billboards in the City's ETJ.  The City has ticketed Plaintiff for this conduct,[4] and Plaintiff states that it has contested the tickets in Municipal Court.

In addition, regarding permitting, the Sign Code states, "No person shall erect, reconstruct, alter, relocate, or use a sign .

---

[2] City of Houston defines the ETJ as "the unincorporated area contiguous to the City's boundaries that is located within five miles of those boundaries pursuant to Chapter 42 of the Texas Local Government Code."  Ex. A to #7, City's Original Petition in state court suit in the 295th Judicial District of Harris County, Texas at 2-3.

[3] Under the the regulations issued pursuant to the Federal Highway Beautification Act, the State is authorized to "set criteria for size, lighting and spacing of outdoor advertising signs located in commercial or industrial zoned or unzoned areas . . . adjacent to Interstate and Federal-aid primary highways. . .If the zoning authority has been delegated, extraterritorial, jurisdiction under State law and exercises control of outdoor advertising in commercial and industrial zones within this extraterritorial jurisdiction, control by the zoning authority may be accepted in lieu of agreement controls in such areas." 23 C.F.R. § 750.706(a) and (b)(3).  Plaintiff argues that federal regulations do not allow a state, without risking highway funding, to cede control of signs alongside federally funded highways in an ETJ if the city does not zone the ETJ.  Houston has no zoning and thus cannot assume control of the signs in its ETJ from the State of Texas under the regulation.  Plaintiff further points to 23 C.F.R. § 750.706(c)(3)(city control may be accepted "in lieu of" a state permit) and maintains that since the State of Texas has not ceded control of the ETJ to the City and since the State does issue permits for billboards in that ETJ, Plaintiff is not required to seek an additional permit from the City.  It does note that recently the Legislature changed the law to bar the State from issuing sign permits in the City's ETJ, but that fact confirms that when Plaintiff obtained its permits from the State, they were all it was required to obtain.

[4] At the hearing counsel for the City estimated that it has issued Plaintiff about 200 tickets and that Plaintiff has recently refused to appear in court to contest them.  Nevertheless the City apparently has not sought to arrest or prosecute Plaintiff for its failure to appear.

. . . without first having obtained a written permit . . . ." Section 4605(a).  According to Plaintiff, on August 30, 2007, the City Attorney mailed a letter[5] to all of Plaintiff's advertiser customers warning they would be subjected to criminal fines of $500 per day if they continue to use a sign without obtaining a permit within thirty days.  Plaintiff contests the City's interpretation of the term "use" in "use a sign" in Section 4605(a) to reach and to fine its advertisers for their failure to obtain permits.  It contends that the Sign Code only requires the "person" who erects, maintains, owns, or leases the billboard, in other words, the person who is responsible for and controls the sign, to obtain a permit.[6]  At the hearing Plaintiff's counsel further argued that by

---

[5] Ex. A to the First Amended Complaint (#3).  Plaintiff has also attached as Ex. B a list of its advertiser clients to whom the letter was sent.

[6] "Use" is not defined in the Code, so Plaintiff looked to the Code as a whole to determine its meaning.  Noting that there is no provision in the Code that requires an advertiser to perform any act, the City points to Section 4605(c)(2) regarding "Application Procedure"; it requires that "Every application shall be executed and verified under oath by both the owner of the premises upon which the sign is to be or has been constructed, or the authorized lessee of such premises, and the sign company if the sign is an off-premise sign . . . and shall contain the sworn affidavit of the owner or lessee and the sign company that the sign does not violate any applicable deed restriction or other similar restrictions on the premises."  It does not mention an advertiser.

The City responds that Plaintiff misconstrues the City's application of the ordinance.  It does not seek to require an advertiser to apply for a permit, but intends under section 4605 ("[n]o person shall erect, reconstruct, alter, relocate or use a sign within the sign code application area without first having secured a written permit from the Sign Administrator to do so") to issue citations to advertisers who "use" the signs for which the "owner, lessee or person responsible for the sign" has not obtained a permit.  To Plaintiff's assertion that the City lacks the power to prohibit use of a sign by an advertiser, the City finds that authority in section 216.90 of the Texas Local Gov't Code Ann. (Vernon 2007) providing that "[a] home-rule municipality may license, regulate, control or prohibit the erection of signs or billboards . . . ."  At the hearing counsel further argued that since the City had been unable to force Plaintiff to stop erecting signs without permits, it "finally found a means to stop

targeting the advertiser the city was targeting the content of the billboard.

If Plaintiffs succeed on the merits of their action they seek as a remedy a declaration that on its face Chapter 46 (1) violates the Free Speech Clause of the First Amendment of the United States Constitution because it discriminates based on content between commercial speech (advertising, here) and noncommercial speech and (2) violates the Due Process Clause of the Fourteenth Amendment because it attempts to prohibit what state law permits. Additionally Plaintiff seeks a declaration that the term "use" in the Sign Code does not mandate that an advertiser must have a permit because such a construction of the regulation is inconsistent with the language and purposes of the Code, violates the First and Fourteenth Amendments of the federal Constitution, and violates the Texas Constitution because it is inconsistent with State law.

The City filed a civil suit[7] against Plaintiff in state court to force it to remove its off-premises billboards and to recover the income Plaintiff has received from these billboards. Plaintiff's answer in state court is due by September 28, 2007.

**Preliminary Injunctive Relief**

---

them"–i.e., ticketing and fining its advertising clients, who would then stop doing business with Plaintiff.

[7] The Original Petition is Ex. A to #7.

Today, this Court addresses only the request for a preliminary injunction and not the merits of the case.

The City has raised some threshold issues that need to be addressed before reviewing the elements for an injunction.

First, the City argues that this Court should abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971) because the City has instituted both civil and criminal proceedings in state court against Plaintiff to enforce its Sign Code and Plaintiff has an adequate opportunity to raise its constitutional challenges in those state proceedings.

A *Younger* abstention is usually appropriate when "assumption of jurisdiction by a federal court would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character."[8]  *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir.), *cert. denied*, 510 U.S. 823 (1993).  To make that determination, the court examines several factors: (1) whether the state proceedings "constitute an ongoing state judicial proceeding"; (2) whether the proceedings "implicate important state interests"; and (3) whether the federal plaintiff would have "an adequate opportunity in the

---

[8] Although originally the *Younger* doctrine applied only where state criminal proceedings were ongoing, it has been expanded to civil and administrative proceedings where they are "judicial" in nature. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986). It is not clear to this Court whether criminal prosecution of Plaintiff has commenced in state court; the parties disagree over the issue.

state proceedings to raise constitutional challenges." *Louisiana Debating an Literary Assoc. v. City of New Orleans*, 42 F.3d 1483, 1490 (5th Cir. 1995). The state proceedings must be ongoing and judicial in nature. *Id. See also Texas Association of Business v. Earle*, 388 F.3d 515, 518-21 (2004).

Nevertheless facial challenges to statutes on First Amendment grounds have been exempted from the abstention doctrine, which, itself, is "the exception and not the rule." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976). In *Dombrowski v. Pfister*, 380 U.S. 479, 489-90 (1965), the Supreme Court held that "the abstention doctrine is inappropriate . . . where . . . statutes are justifiably attacked on their face as abridging free expression . . . ." *See also City of Houston, Tex. v. Hill*, 482 U.S. 451, 467-68 (1987)("[W]e have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment . . . . 'In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect.'") *Id.*, *citing and quoting Dombrowski*, 380 U.S. at 489-90, and *Zwickler v. Koota*, 389 U.S. 241, 252 (1967).

Second, the City challenges Plaintiff's standing to bring suit on behalf of the advertisers.

Standing is a jurisdictional requirement that may not be waived. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). To have standing, a plaintiff must show that he personally suffered some actual or threatened injury, that the injury is fairly traceable to the defendant's challenged action, and that the relief that plaintiff has requested will redress the injury. *Doe v. Tangiphoa Parish School Bd.*, 494 F.3d 494, 496 (5th Cir. 2007); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006)(*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), *cert. denied*, 127 S. Ct. 938 (2007). The injury "must be actual or imminent, and not abstract, conjectural, or hypothetical." *Federal Election Com'n v. Akins*, 524 U.S. 11, 20 (1998).

In addition, prudential restrictions include "a requirement that a litigant generally must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties." *Ward v. Santa Fe Independent School District*, 393 F.3d 599, 606 (5th Cir. 2004), *citing Warth v. Seldin*, 422 U.S. 490, 499 (1975)(rule against bringing *jus tertii* claims). The rationale for this rule was that (1) it "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in area where their constitutional application might be cloudy" and (2) it insures that the issue before the court will be concrete and

sharply defined. *United States v. Raines*, 362 U.S. 17, 22 (1960); *Baker v. Carr*, 369 U.S. 186, 204 (1992).

In *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1975),[9] however, the United States Supreme Court held that "where competing considerations outweigh any prudential rationale against third-party standing," the rule is "relaxed." Specifically, it opined,

> Within the context of the First Amendment, the Court has enunciated other concerns that justify a lessening of prudential limitations on standing. Even where a First Amendment challenge could be brought by one engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole then would be the loser. Thus when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that

---

[9] In *Munson,* the plaintiff, a professional for-profit fund-raising organization, sought declaratory and injunctive relief in a suit against the Secretary of State of Maryland in a First Amendment challenge to a statute prohibiting charitable organizations from paying or agreeing to pay as expenses in a fund-raising activity more that 25% of the amount raised; thus the statute placed restrictions on a charity's protected First Amendment rights. Munson standardly charged charitable organizations more than the statutory cap for the events Munson promoted. Morever, the Secretary threatened to prosecute Munson if it did not comply with the limitation. As a result, Munson's charity clients were reluctant to enter into contracts with Munson and its business was impaired. The Court determined that Munson had standing to challenge the statute because it suffered actual and threatened injury because of the statute. 467 U.S. at 954-55. Moreover, even though there was no showing that a charity could not bring its own suit, the Supreme Court applied the narrow exception to prudential concern embodied in the rule against *jus tertii* claims, where a statute allegedly chills free speech is challenged as overly broad under the First Amendment. The Court allowed Munson to go forward because of society's interest in having the statute challenged because it might chill the First Amendment rights of others. *Id.* at 957-58.

>      the statute's very existence may cause others not before
>      the court to refrain from constitutionally protected
>      speech or expression."

*Id.* at 956-57, *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Plaintiff has standing to sue on its own behalf and on the advertisers' behalf. It has shown that a real and substantial controversy exists between it and the City. As a billboard company erecting billboards containing both commercial and noncommercial or mixed messages[10] that are regulated by the ordinance, it has standing for a First Amendment facial challenge to the constitutionality of an ordinance regulating billboards on the basis of content. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 503-04 (1981). Plaintiff has also been cited for violations of the ordinance approximately two hundred times in the last three years, and the City instituted a civil suit in July 2007 against it and threatens criminal prosecution. *Houston Chronicle Pub. Co. v. City of League City*, 488 F.3d 613, 618-19 (5th Cir. 2007)(Houston Chronicle has injury-in-fact standing for a First Amendment challenge, both facially and as applied, of an ordinance barring vendors at street intersections as unconstitutional after receiving citations for violating it and after city promised to enforce the

---

[10] Testimony at the hearing from the City's Sign Administrator, Susan Luycx, indicated that the determination whether a sign was commercial or noncommercial generally was not simple, required research, and, implicitly, a value judgment that could not be made merely from the face of the message.

ordinance against the newspaper), *citing Steffel v. Thompson*, 415 U.S. 452, 459 (1974)("it is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *Int'l Soc'y for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 818 (5th Cir. 1979)(a justiciable controversy exists when "the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing the challenged measure").

Moreover the relaxing of the prudential rule against third-party claims and the narrow First Amendment exception apply here. Geoff Roberts, CFO of RTM Media since 2002, testified that a lot of its advertising customers, which are generally small businesses, had called about the City's letter threatening to criminally fine them, and a few demanded to be released from their contracts with Plaintiff; the clients' withdrawal would in turn substantially damage Plaintiff's business. *Munson*,, 467 U.S. at 954-55. (Munson's clients' reluctance to enter into contracts with Munson after Munson was threatened with prosecution if it failed to comply with the statute was found to be a sufficient injury for standing).

Moreover, with respect to challenging the term "use" on behalf of its advertisers, the Court would point out that the City's Sign Administrator testified that permits are not required of advertisers. Furthermore a careful reading of the letter sent to

Plaintiff's advertisers demonstrates that the City only threatens to fine those advertisers who place commercial messages on billboards not permitted by the City. Regardless, the narrow exception to the *jus tertii* rule applies here, given the threat of chilling their speech based on the City's epistolary threats to criminally fine its advertisers. The causation and redressibility elements are obviously satisfied here also. The ordinance has caused the citations, civil law suit, and threat of criminal prosecution of Plaintiff and the threat of citations of the advertisers. Enjoining enforcement of the Sign Code would clearly redress that injury.

Third, the City contends that the Sign Code is constitutional because the City has reasonable justification for exempting noncommercial signs and because courts have upheld distinctions between commercial and noncommercial signs in other cities' sign codes as constitutional. *Lavey v. City of Two Rivers*, 171 F.3d 1110 (7th Cir. 1999); *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp.2d 403 (E.D.N.Y. 2001). This argument goes to the merits of the case, which are not before the Court today. Moreover these two cases do not address the precise issue for prelimnary injunctive relief before this Court today.

Fourth, the City contends collateral estoppel precludes Plaintiff from relitigating the issue of whether it is required to obtain a permit from the City before erecting billboards in the

highway corridor of ETJ. *Brooks v. State of Houston*, 226 S.W.3d 607, 610-11 (Tex. App.–Houston [14th Dist.] 2007)(holding that section 216.902 of the Texas Local Government Code authorizes a home-rule city, such as Houston, to regulate off-premises signs along primary highways in its ETJ, but is silent as to barring both State and home-rule city from concurrently regulating off-premises signs along interstates and primary highways in the City's ETJ.).[11] Plaintiff is not seeking injunctive relief based on this issue of State versus City regarding jurisdiction over the ETJ. Plaintiff's request is based on its facial challenge that the Sign Code discriminates based on content against billboards with commercial messages while permitting those with noncommercial messages and on the City's threats to fine the advertisers who post commercial messages on billboards not permitted by the City under the Sign Code, in violation the First Amendment.

## Standard of Review

An injunction is an extraordinary equitable remedy that may only be granted if the plaintiff demonstrates four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the court denies injunctive relief; (3) the threatened injury outweighs any damage that the injunction might cause to the nonmovant; and (4) the injunction will not disserve the public

---

[11] Curtis Brooks is Plaintiff's director.

interest. *Hoover v.* Morales, 164 F.3d 221, 224 (5th Cir. 1998); *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).

In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), the Supreme Court noted "the lesser protection accorded to commercial speech than to other constitutionally guaranteed expression" in its previous opinions. Id. at 562-63. Nevertheless it observed, "Commercial expression not only serves the economic interest of the speaker, but it also assist consumers and further societal interest in the fullest possible dissemination of information." *Id.* at 562. Thus the "First Amendment's concern for commercial speech is based on the informational function of its advertising" and therefore the government can suppress inaccurate, misleading, or deceptive communications and "commercial speech related to illegal activity."[12] *Id*. at 563-64. For other commercial speech, it "must assert a substantial interest to be achieved by restrictions on commercial speech" and its "regulatory technique must be in proportion to that interest," with any restrictions on expression "designed to achieve the State's goal." *Id*. at 564. Thus the Supreme Court established two criteria to ensure any restriction on commercial speech is constitutional: it must "directly advance

---

[12] No one in the instant action has alleged that the advertisements on Plaintiff's billboards were related to illegal activity or that they were false or misleading. Thus *Central Hudson*'s two-prong test applies here.

-14-

the state interest involved" and it must be "narrowly drawn" to extend the restriction only as far as it serves that state interest. *Id.* at 564-65. The restriction does not have to be the least restrictive means available, but there must be a reasonable fit between the state or government's goals and the means chosen to accomplish those goals. *Board of Trustees of Statue University of New York v. Fox*, 429 U.S. 469, 480 (1989).

Based on the ruling in *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993), this Court concludes that Plaintiff has a substantial likelihood of success on the merits here. In that case, purportedly for purposes of safety and aesthetics, the City of Cincinnati banned newsracks on public property containing commercial publications while allowing newsracks with noncommercial publications and notified the commercial newsrack owners to remove their newsracks within thirty days. It argued that the regulation would result in many fewer newsracks, thereby increasing safety and attractiveness in the city. Discovery Network, which advertised its adult educational, recreation and social programs in a free magazine that was distributed on newsracks in Cincinnati, sued the city. Rejecting Cincinnati's assertion that "the 'low value' of commercial speech is a sufficient justification for its selective and categorical ban on newsracks dispensing 'commercial handbills,'" the Supreme Court found that because the regulation eliminating some newsracks was

based on the difference in content between ordinary newspapers and commercial speech, it was unconstitutional; it was not content neutral nor a valid time, place, or manner restriction on speech. The distribution of noncommercial publications was just as likely to result in littering as the distribution of commercial publications. *Id.* at 428-29.  Both types of newsracks were equally unattractive.  The Supreme Court opined, "Not only does Cincinnati's categorical ban on commercial newsracks place too much importance on the distinction between commercial and noncommercial speech, but in this case the distinction bears no relationship *whatsoever* to the particular interests the city has asserted.  It is therefore an impermissible means of responding to the city's admittedly legitimate interests."  *Id.* at 424.

This Court sympathizes with the City's substantial interest in reducing and preventing "billboard blight" for reasons of aesthetics, traffic safety, and property values, but the City cannot achieve those goals by regulating billboards based on the content of their message.  Noncommercial billboards are visual blights, traffic dangers, and undesirable for property values for the same reason as commercial billboards.  The City can impose content neutral restrictions on time, place, and manner without reference to the content of the regulated speech and that are directly related to their goals, e.g., restricting the overall number of billboards it permits, their location, size, etc., but

not by regulating and prohibiting only off-premises commercial billboards while allowing noncommercial billboards to proliferate freely.  Moreover, threatening to fine or fining commercial advertisers, who have no control over a sign and cannot take it down, does not meet the requirement that restrictions on speech must be directly related to the City's goals but clearly infringes on their right of freedom of speech.  The City's justification that such pressure tactics against advertisers are acceptable because they "work" does not cure the constitutional problem here.

It is well established that a violation of a party's constitutional rights constitutes irreparable harm as a matter of law.  *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981).  A denial of First Amendment freedoms, even for a short period of time, constitutes irreparable injury.  *New York Times Co. v. United States*, 403 U.S. 713 (1971).

The threatened injury to Plaintiff and to the advertisers outweighs any damage the injunction could cause the City. Plaintiffs and others will be denied their First Amendment freedoms if the ordinance is enforced, while the City has alterative, constitutional ways of regulating signs in a content-neutral manner to achieve its goals of  protecting the City's aesthetics, traffic safety, and property values.

It is clearly in the public interest to enjoin an ordinance that restricts the public's constitutional right to freedom of speech.

Accordingly, the Court

ORDERS that Plaintiff's motion for preliminary injunction is GRANTED. It is therefore

ORDERED that the City shall be enjoined from enforcing its Sign Code, codified at Chapter 46 of the City of Houston Building Code, because there is a substantial likelihood that its content-based distinction between commercial and noncommercial speech violates the Free Speech Clause of the First Amendment and (2) from fining or threatening to fine advertisers placing advertisements on billboards in the ETJ not permitted by the City. Pursuant to Fed. R. Civ. P. 65(c) Plaintiff shall file with the Clerk of the Court a bond in the amount of $25,000.00 as security.

The Court further

ORDERS that the following docket control schedule is now in effect:

1. **MOTIONS FOR LEAVE TO AMEND PLEADINGS AND JOIN NEW PARTIES** will be filed by:     October 17, 2007
   Party requesting joinder will furnish copy of this Scheduling Order to new parties.

2. **EXPERT WITNESSES** for the **plaintiff** will be named and a report of the experts's opinion furnished by:     November 3, 2007

3.  **EXPERT WITNESSES** for the **defendant** will be named and a report of the expert's opinion furnished by:     November 14, 2007

4.  **DISCOVERY** must be completed by:     December 19, 2007

    Counsel may, by agreement, continue discovery beyond the deadline, but no continuance will be granted because of information acquired in post-deadline discovery.

5.  **DISPOSITIVE MOTIONS** will be filed and served by:     January 18, 2008

6.  **NON-DISPOSITIVE MOTIONS** will be filed by:     January 18, 2008

7.  **JOINT PRETRIAL ORDER** will be filed by:     March 17, 2008

    Plaintiff is responsible for filing the Pretrial Order on time.

8.  **DOCKET CALL** is set for 1:30 P.M.     March 28, 2008

9.  **TRIAL** is set for the two weeks starting:     March 31, 2008.

    **SIGNED** at Houston, Texas, this 26th day of September, 2007.

    _____
    MELINDA HARMON
    UNITED STATES DISTRICT JUDGE